CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 2 6 2017

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Civil Action No. 7:12-CR-00007 |
| v. | ) | |
| | ) | |
| ANTHONY MOLETTE CHARLES | ) | By: Hon. Michael F. Urbanski |
| Petitioner. | ) | Chief United States District Judge |
| | ) | |

## MEMORANDUM OPINION

Anthony Molette Charles, a federal inmate proceeding pro se, has filed a motion to

vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 87.

Specifically, Charles alleges that counsel provided ineffective assistance by failing to contest

Charles' career offender designation and that Charles should receive an advisory guidelines

range without the career offender enhancement. The government filed a motion to dismiss,

ECF No. 92, to which Charles responded, making this matter ripe for disposition. Upon

review of the record, the court concludes that Charles has not stated any meritorious claim

for relief under § 2255 and the government's motion to dismiss must be granted.

### I.

On January 26, 2013, a federal grand jury returned an indictment against Charles,

charging him with knowingly and willfully possessing with the intent to distribute a

measurable quantity of a mixture or substance containing cocaine powder, in violation of 21

U.S.C. §§ 841(a)(1) and (b)(1)(C) ("Count One"). Indictment at 1, ECF No. 3. On March

31, 2015, Charles and the government entered into a written plea agreement, pursuant to

Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, in which Charles agreed to

plead guilty to Count One in exchange for an agreed-upon imprisonment term between 90 and 130 months. Plea Agree. at 1, ECF No. 47. The plea agreement noted that the maximum term of imprisonment Charles could face for a possession with intent to distribute cocaine conviction was 20 years, and, that absent the Rule 11(c)(1)(C) plea agreement, Charles may have qualified as a career offender under the United States Sentencing Guidelines ("USSG"). Id. at 1, 3.

A guilty plea hearing was held on March 31, 2015. At the hearing, the government reviewed the essential terms of the plea agreement on the record and noted that it was a binding plea pursuant to Rule 11(c)(1)(C). Plea Hr'g Tr. at 16, ECF No. 76. Charles affirmed his understanding that by pleading guilty, he waived his right to appeal and to collaterally attack his sentence except in limited circumstances. Id. at 13. The court asked whether Charles was fully satisfied with the advice and representation provided to him by defense counsel, to which Charles answered in the affirmative. The court asked Charles whether he read the plea agreement and to what extent he discussed it with his attorney, to which Charles responded that he and counsel read and went over every page. Id. at 10.

The court continued to confirm further, asking defense counsel if he had communicated with Charles about whether or not Charles may be a career offender. Id. at 8. Counsel responded that there was a "strong likelihood" that Charles would qualify as a career offender under the USSG, and that the parties' understanding of this formed part of the basis for Charles entering into the plea agreement. Id. Charles affirmed his understanding that he likely qualified for career offender status, and reiterated his understanding that by signing the plea agreement he was agreeing to the terms therein. Id. at

11. As the guilty plea hearing continued, Charles affirmed that no one had made any promises to him other than those contained in the plea agreement to cause him to plead guilty and that no one had coerced him to plead guilty. Id. at 14-15. Following all of Charles' affirmations, the court concluded that Charles was fully competent and capable of entering an informed plea and that he was aware of the nature of the charges against him and the consequences of the plea. Id. at 25, 31. At the close of the hearing, the court took the matter under advisement pending preparation of a Presentence Investigation Report ("PSR") in anticipation of sentencing. Id. at 31.

The PSR recommended a base offense level of 16 because it concluded that the possession with intent to distribute offense involved more than 100 grams but less than 200 grams of cocaine, pursuant to USSG § 2D1.1 (2014).[1] Sent. Hr'g Tr. at 9, ECF No. 64. The PSR also recommended that Charles be classified as a career offender, which carried an adjusted offense level of 32, based on the following convictions: 1994 New Jersey manufacture/distribution of a controlled dangerous substance on school property, and 1994 Maryland possession with intent to distribute 50 grams of cocaine. PSR ¶ 20, ECF No. 70; see USSG. § 4B1.1. Charles received a three-point reduction for acceptance of responsibility, for a total offense level of 29, with a criminal history category of VI, which

---

[1] The PSR was amended at the sentencing hearing to reflect a drug weight of 149 grams and a base offense level of 16. Sent. Hr'g Tr. at 9, ECF No. 64. Before the amendment, the PSR had specified a drug weight between 200 and 300 grams and a base offense level of 18. PSR ¶ 14, ECF No. 70. This amendment, however, did not change the adjusted offense level of 32 because the sentencing court found Charles to be a career offender, and that enhancement required the offense level of 32. Sent. Hr'g Tr. at 9-10, ECF No. 64.

resulted in an advisory sentencing Guideline imprisonment range of 151-188 months.[2] Id. ¶¶ 21-23, 35, 36, 64.

Defense counsel filed a sentencing memorandum requesting that the court accept Charles' plea and sentence him at the low end of the 90-130 months range stipulated in the plea agreement. Sent. Mem. at 14, ECF No. 57. Counsel reiterated that Charles entered into the plea agreement based upon the parties' understanding that Charles would be classified as a career offender. Id. at 3. Counsel noted, however, that Charles objected to the PSR's finding that he was a career offender and had retained other counsel to file a petition for Coram Nobis relief in Maryland state court to challenge his 1994 Maryland predicate conviction. Id. Counsel communicated that Charles further objected to his criminal history score and resulting advisory Guideline range of 151-188 months, claiming that he was instead entitled to an advisory Guideline range without the career offender enhancement. Id. at 2. After raising Charles' objections, counsel argued it was unreasonable to sentence Charles as a career offender even though he technically qualified as one. Counsel argued that because Charles was sentenced to his second predicate offense while in custody and serving his sentence for his first predicate offense, he was different from a defendant who had been "given two periods of prison confinement for two serious felonies, but failed to learn his lesson." Id. at 5-6.[3] In response, the government argued in its sentencing memorandum that Charles' categorization as a career offender was appropriate because his

---

[2] The statutory maximum term of imprisonment for this offense is 20 years. 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). The government chose not to file an enhancement pursuant to 21 U.S.C. § 851, which would have resulted in a 30-year maximum. PSR ¶ 66, ECF No. 70; Sent. Hr'g. Tr. at 18, ECF No. 64.

[3] Charles served a 20-year sentence for the two predicate offenses, the New Jersey and Maryland convictions. It was clarified during the sentencing hearing that the two sentences were aggregated together so that Charles would serve one sentence. Sent. Hr'g. Tr. at 23, ECF No. 64.

two prior drug convictions, constituting his predicate offenses, were two of eight drug-related convictions on Charles' record. Gov't Sent. Mem. at 3-4, ECF No. 58. Of those eight drug-related convictions, the government argued that three were for possession of cocaine with intent to distribute, the same offense to which Charles pleaded guilty in his plea agreement. Id.

A sentencing hearing was held on November 23, 2015. At the hearing, defense counsel repeated the objection raised in the sentencing memorandum about Charles' career offender status and criminal history score. Sent. Hr'g Tr. at 15-18, ECF No. 64. The court then asked Charles if he wanted the court to accept the Rule 11(c)(1)(C) plea agreement. Charles initially declined, so the court asked Charles to confer with defense counsel. Id. at 20. As Charles and counsel continued to confer, the court informed Charles of his option to go to trial and the statutory maximum sentence of 20 years he faced without the plea agreement. Id. After it appeared that Charles had thoroughly discussed the plea agreement with counsel, Charles stated to the court that he understood all of the elements of the plea agreement and that he wanted the court to accept the plea agreement range of 90-130 months of imprisonment. Id. at 21. Concluding that the Rule 11(c)(1)(C) plea was the appropriate disposition of the case, the court accepted the plea agreement and sentenced Charles to the low end of the stipulated range for a total of 90 months' imprisonment and a term of three years of supervised release. Id. at 33; see Judgment at 2-3, ECF No. 65. The court entered judgment on December 1, 2015. Charles subsequently appealed, but later withdrew that appeal.

On December 5, 2016, Charles filed the present § 2255 motion seeking a reduced sentence in light of Mathis v. United States, 136 S. Ct. 2243 (2016), arguing that his career offender designation is invalid because at least one of his predicate offenses no longer qualifies. In his motion, Charles alleged that he would have received the benefit of a lower sentence had there been no career offender enhancement, and he would have had no career offender enhancement had counsel been effective in disqualifying his 1994 New Jersey and 1994 Maryland predicate convictions. § 2255 Mot. at 1-2, ECF No. 87. Subsequently, Charles filed a motion to appoint counsel for purposes of this claim, which the court denied. ECF No. 96.

## II.

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Charles bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965).

## A.

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). The proper vehicle for a defendant to raise an ineffective assistance of counsel claim is by filing a § 2255 motion. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010). However, ineffective assistance claims are not lightly granted, as "[t]he benchmark for judging any claim of ineffectiveness must be

whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. Accordingly, in order to state a viable claim of ineffective assistance of counsel, a defendant must satisfy a two-prong analysis showing both that counsel's performance fell below an objective standard of reasonableness and that defendant was prejudiced by counsel's alleged deficient performance. Id. at 687.

When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; Gray v. Branker, 529 F.3d 220, 228-29 (4th Cir. 2008). The court must assess counsel's performance "on the facts of the particular case," and "from counsel's perspective at the time." Strickland, 466 U.S. at 689, 690. To satisfy the prejudice prong of Stickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. As explained below, Charles' claim of ineffective assistance of counsel does not satisfy Strickland's stringent requirements.

## B.

Charles argues that counsel's representation was deficient because he failed to make several challenges to the calculation of his advisory guidelines range in the PSR. § 2255 Mot. at 15, ECF No. 87. Specifically, Charles argues that counsel should have objected to his designation as a career offender when negotiating the terms of his Rule 11(c)(1)(C) plea agreement, asserting that there was uncertainty between the parties as to whether Charles'

prior New Jersey and Maryland convictions qualified as career offender predicate offenses and that counsel should have researched the issue further.[4]

Charles' argument that counsel should have objected to his status as a career offender is without merit.[5] Charles asserts that he did not qualify as a career offender under the guidelines because he does not have two qualifying predicate offenses. Counsel made this same argument numerous times, and never withdrew his objection even though it appeared that the career offender designation applied. Counsel repeatedly raised the career offender objection at the guilty plea hearing, in the sentencing memorandum, and again at the sentencing hearing. Nothing in the record supports a finding that counsel failed to object to Charles' status as a career offender or that his research and argument was deficient.[6]

Moreover, none of Charles' guideline calculation arguments have merit because Charles entered into the plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, which provided for an agreed-upon sentence between 90 and 130 months. Rule 11(c)(1)(C) permits the parties to "agree that a specific sentence or sentencing range is the appropriate disposition of the case, . . . [a request which] binds the court once

---

[4] Charles additionally argues that counsel should have objected to "ambiguities in the Maryland record" and "subject matter jurisdiction issues." § 2255 Mot. at 15, ECF No. 87. Because the court views these objections as part of Charles' objection to the calculation of his advisory Guidelines range, the court need not address them individually.

[5] In order to qualify as a career offender, Charles must have had at least two prior convictions for a controlled substance offense. The guideline defines a "controlled substance offense" as an offense involving a controlled substance that is punishable by more than a year in prison. USSG § 4B1.2(b). Charles has two prior convictions for drug offenses that were punishable by more than a year. PSR ¶ 20, ECF No. 70. Accordingly, the PSR properly categorized Charles as a career offender.

[6] In his brief in opposition to the government's motion to dismiss, Charles asserts that "an evidentiary hearing is warranted in order to determine precisely what counsel's 'professional judgment' that petitioner would qualify as a career offender was based on." Brief in Opp. at 4, ECF No. 97. The court has reviewed Charles' ineffective assistance of counsel claim, finding that counsel's performance was not deficient, and the court need not hold any evidentiary hearings.

the court accepts the plea agreement." A Rule 11(c)(1)(C) plea agreement is not based on the advisory Guidelines range in a defendant's case, unless the plea specifically sets forth the Guidelines range or the Guidelines range is otherwise evident. See Freeman v. United States, 564 U.S. 522, 534, 539 (2011) (Sotomayor, J. concurring) (noting, in concurrence, that a Rule 11(c)(1)(C) plea agreement is sometimes based on sentencing guidelines, but only when the agreement itself "expressly uses a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment" or the sentencing range is otherwise "evident from the agreement itself"); see also United States v. Brown, 653 F.3d 337, 340 (4th Cir. 2011) (concluding that Justice Sotomayor's concurring opinion, which is narrower than the plurality, controls). In Charles' case, even though the court considered the advisory Guidelines range, the plea agreement did not specify or rely on it. See e.g., Brown, 653 F.3d at 340 ("[Petitioner's Rule 11(c)(1)(C)] plea agreement simply states the appropriate sentence[]…The fact that the district court consulted the Guidelines in establishing [petitioner's] specific sentence is irrelevant.") (internal quotations omitted). In fact, the agreed sentencing range of 90 to 130 months departed below the advisory Guidelines range of 155 to 181 months, and the court expressly stated "this is a (C) plea, []not a guidelines plea." Sent. Hrg. Tr. at 4, ECF No. 64. Because Charles' sentence was based solely on his plea agreement and the Guidelines were not "expressly used" to calculate it, the court concludes that Charles' sentence was not "based on" his advisory Guidelines range. Freeman, 564 U.S. at 534, 539. As such, Charles cannot show that he was prejudiced by any error that may have occurred in calculating his advisory Guidelines range. Strickland, 466 U.S. at 694.

## C.

In any event, even if the court considers Charles's claim to recalculate his advisory Guidelines range without the career offender enhancement, his claim fails. Charles accepted the terms of his Rule 11(c)(1)(C) plea agreement, and therefore, he cannot collaterally attack his sentence by way of a § 2255 motion. See United States v. Foote, 784 F.3d 931, 936-40 (4th Cir. 2015) (a petitioner, generally, may not use section 2255 to challenge the calculation of his advisory Guidelines range). In petitions involving Rule 11(c)(1)(C) pleas, "[a] criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). However, a defendant's allegations that contradict statements he made during a plea colloquy cannot support a finding of error. Id. at 221 (holding that, absent extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false"). Here, Charles cannot establish anything other than that his wavier was knowingly and voluntarily made. He signed and initialed every page of his plea agreement, which stipulated that he waived his right to collaterally attack his sentence. See ECF No. 47. At his plea colloquy, the court reviewed with Charles that he was giving up his right to collaterally attack his sentence, and explained that he would be giving up the right to ask the court to release him from prison absent a claim based on ineffective assistance of counsel. Plea Hr'g Tr. at 24, ECF No. 76. Charles stated that he understood. Id. at 25. Because Charles' claim directly contradicts his sworn statements at his plea colloquy, Charles

cannot attack his sentence outside his ineffective assistance claim. Lemaster, 403 F.3d at 221.

To the extent that Charles relies on Mathis v. United States, 136 S. Ct. 2243 (2016), to seek reconsideration of his career offender designation, his claim likewise fails. The United States Supreme Court in Mathis expressly stated that it was not announcing a new rule and that its decision was dictated by "more than 25 years" of consistently held precedent. 136 S. Ct. at 2257; see also Teague v. Lane, 489 U.S. 288, 301 (1989) ("[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final."). Because Mathis does not announce a new rule that was nonexistent at the time Charles executed his plea agreement, the waiver provisions are fully applicable such that Charles both knowingly and voluntarily waived his Mathis argument. Importantly, even if the court concluded that Charles had not waived his Mathis argument, its holding is immaterial to this case. The court in Mathis held that the modified categorical approach, which is used to determine whether a prior conviction constitutes a predicate offense as defined in the Armed Career Criminal Act (ACCA), may not be applied to statutory offenses listing alternative "means" as opposed to alternative "elements." 136 S. Ct. at 2251-53. Charles is not challenging a conviction under the ACCA, nor was he ever convicted under the ACCA, thus precluding review of Charles' claim under Mathis.

## III.

For the reasons stated, Charles' § 2255 motion, ECF No. 87, is **DENIED**, and the government's motion to dismiss, ECF No. 92, is **GRANTED**. Because Charles has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C.

§ 2253(c) and <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000), a certificate of appealability is denied. The Clerk is directed to strike this matter from the active docket.

It is so **ORDERED**.

Entered: *12/22/2017*

*/s/ Michael F. Urbanski*

Michael F. Urbanski
Chief United States District Judge